UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MARTIN J. BRADLEY, III,

Petitioner,

v.  4:13-cv-121
    4:05-cr-59

UNITED STATES OF AMERICA,

Respondent.

# ORDER

## I. INTRODUCTION

Petitioner Martin J. Bradley, III ("Bradley") petitions the Court for a Certificate of Appealability ("COA") so that he may challenge the Court's denial of his habeas corpus motion. ECF No. 19. Because reasonable jurists could disagree as to some of his arguments, his motion is **GRANTED IN PART** and **DENIED IN PART**.

## II. BACKGROUND

This Court presided over the Petitioner's criminal trial for Medicaid fraud. A jury convicted him on most counts of the indictment, ECF No. 1 at 2, and he unsuccessfully took direct appeal. *Id.* at 2-3. Bradley then brought this federal habeas action under 28 U.S.C. § 2255. *Id.* He alleged multiple errors, including ineffective assistance of trial and appellate counsel, numerous jury irregularities, *ex parte* communications between the Court and jury, and incorrect sentencing. *Id.*

This Court denied Bradley habeas relief on December 3, 2013. ECF No. 17. He timely moved for a COA, ECF No. 19, and the United States objected. ECF No. 23.

## III. ANALYSIS

### A. Standard of Review

#### 1. *Certificate of Appealability*

"Before an appeal may be entertained, a prisoner who was denied habeas relief in the district court must first seek and obtain a COA . . ." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *see* 28 U.S.C. § 2253(c). A low but non-trivial standard governs the Court's decision whether to issue a COA. Specifically, the Court will issue a COA "where a petitioner has made a substantial showing of the denial of a constitutional right." *Miller-El*, 537 U.S. at 336 (internal quotations omitted); *see* 28 U.S.C. § 2253(c)(2). Petitioner "must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotations omitted).

#### 2. *Ineffective Assistance of Counsel*

In each of his four enumerations of error, Bradley argues in some way that his counsel was constitutionally ineffective. ECF No. 19-1 at 5, 16, 18, 23 (arguing in the alternative), 25. *Strickland v. Washington* and its progeny govern those claims. 466 U.S. 668 (1984); *see also Hernandez v. Sec'y, Fla. Dep't of Corrs.*, 408 F. App'x 316, 318 (11th Cir. 2011) (citing *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985)) (noting the Constitution guarantees defendant effective assistance of counsel on first direct appeal).

"[T]o establish constitutionally ineffective counsel, a defendant must show that (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced the defense." *Puiatti v. Sec'y, Fla. Dep't of Corrs.*, 732 F.3d 1255, 1278 (11th Cir. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To determine performance deficiency, courts ask "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 1278-79.

But "judicial scrutiny of an attorney's performance is appropriately highly deferential," and "must indulge a strong presumption that counsel's conduct" was proper. *Id.* at 1279. In fact, "to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel [took]." *Id.* While the Constitution guarantees competent counsel, "[i]t does not insure that defense counsel will recognize and raise every conceivable . . . claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982).

## B. COA

### 1. Failure to Present Materiality Defense

Bradley first requests COA as to whether his counsel's failure to defend as to materiality at trial constituted ineffective assistance of counsel. ECF No. 19-1 at 5-16. Bradley cogently argues that 1) counsel's failure to defend as to materiality cannot be rationalized as a strategic position; 2) the unraised materiality defense would have created a reasonable doubt about an essential element of the Government's case; and 3) the Court's view of a footnote in an Eleventh Circuit opinion from the direct appeal are all at least debatable, and thus worthy of a COA. *Id.* The Government directs the Court to two Eleventh Circuit cases that apply *Strickland*, contending that no reasonable jurist could debate the denial of relief given the exacting standards of the precedent. ECF No. 23 at 3-4 (citing *Dill v. Allen*, 488 F.3d 1344, 1357 (11th Cir. 2007); *Chandler v. United States*, 218 F.3d 1305, 1318 (11th Cir. 2000) (en banc)).

In *Chandler*, the Eleventh Circuit held that "counsel's reliance on particular lines of defense to the exclusion of others-whether or not he investigated those other defenses-is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." 218 F.3d at 1318. So, the Court must focus on whether trial counsel's chosen course was debatably unreasonable. The Court sees absolutely no debate as to whether Bradley's trial counsel acted reasonably because Roy Black and his team obtained acquittal on *nine* counts. ECF No. 553, 4:05-cr-59. Bradley avoids mentioning this in his brief, but it is undeniable evidence that trial strategy worked, albeit not as well as Bradley would have liked. This success, coupled with the Eleventh Circuit principle that "constitutionally sufficient assistance of counsel does not require presenting an alternative . . . theory of the case" forecloses debate on the effectiveness and reasonableness of Bradley's trial counsel. *Dill*, 488 F.3d at 1357.

As noted, Bradley's presentation on this issue had a very intuitive appeal. ECF No.

2

19-1 at 7-16. The standard for a COA is not, however, the ability to make a logical argument on the subject. While Bradley's arguments may appeal to logicians, the arguments lack citation to cases demonstrating that *jurists* could debate his theory. This stands in contrast to other sections of his brief, which are replete with citations demonstrating debate. The Court **DENIES** COA on the issue of whether Bradley's counsel's failure to defend as to materiality at trial constituted ineffective assistance of counsel.

## 2. Court's Supplemental Instruction

During Bradley's trial, this Court gave the jury a supplemental RICO instruction that improperly applied coercive pressure on the jury to reach a verdict. ECF No. 17 at 16-17. The Court concluded that the instruction *did* cause Bradley actual prejudice, *id.* at 17, but that because Bradley's attorneys did not raise the instruction on direct appeal, he was barred from raising it on habeas review, *id.* at 19-21. In doing so, the Court necessarily held that Bradley did not have cause for his failure to argue the issue on appeal: it was neither impossible for Bradley to discover the argument, nor did he receive ineffective assistance of counsel because the arguments counsel *did* raise on appeal were not substantially weaker. *Id.*

Bradley claims that reasonable jurists can dispute these findings. ECF No. 19-1 at 16-18. He alleges that no "competent appellate counsel" could have decided to forego the argument, as the Eleventh Circuit has held that such a jury instruction is plain error. *Id.* at 17.

The Government, unsurprisingly, rejects these contentions. It says that no reasonable jurist can debate this Court's conclusion that Bradley procedurally defaulted the RICO instruction issue. ECF No. 23 at 4. It argues that the alternate strategy Bradley's counsel employed on appeal was more reasonable than Bradley makes it out to be. *Id.* at 5-6. It further argues that because Bradley's counsel did not object to the instruction at trial, the appeals court would have reviewed it only for plain error—further justifying counsel's decision not to run with the argument.[1] *Id.* at 9-10. Finally, it says that failure to include the argument does not constitute actual prejudice. *Id.* at 10-11.

This Court stands by its initial habeas ruling, *see* ECF No. 17 at 21. But it acknowledges that Eleventh Circuit law clouds the issue enough that reasonable jurists might disagree. In *United States v. Jones*, the Circuit held that the district court committed plain error when it instructed a criminal jury that they must come to a decision, or else "you are going to stay here for a long time." 504 F.3d 1218, 1218-19 (11th Cir. 2007). The Circuit noted that even though defendant's counsel did not object to the exchange at trial, telling a jury that it must reach a verdict "constituted a plainly incorrect statement of law . . . ." *Id.* at 1219.

This Court noted that there is no guarantee that Bradley would have won his

---

[1] The parties dispute whether counsel's hesitance when presented with the charge in question constituted an objection. *Compare* ECF No. 1 at 7-8, *with* ECF No. 23 at 9 n.3. Regardless, precedent indicates that this argument might well have survived even plain-error review. *See United States v. Jones*, 504 F.3d at 1218-19.

3

appeal on this issue, or that it would have been materially more effective than the arguments he *did* raise. ECF No. 17 at 21. But Bradley's appellate counsel forewent an argument that the Eleventh Circuit has recently examined, accepted, and invoked in reversing a defendant's conviction. Maybe abandoning such an argument was nevertheless wise, but reasonable jurists can certainly disagree as to its prudence. The Court *GRANTS* a COA on this issue.

### 3. Ex parte *Jury Communications*

In addition to the RICO instruction, the Court and jury engaged in four other substantive *ex parte* communications: a jury request for a dictionary, the Court's denial of that request and instruction to consult the Government's exhibits, a follow-up jury instruction regarding the corporate form, and the jury's response to that instruction stating it needed no more assistance. ECF No. 17 at 16. The Court concluded that these communications were constitutionally infirm but that arguments regarding them were procedurally defaulted because Bradley did not argue them on direct appeal. *Id.* at 19-21. To determine that no cause for opening default existed, the Court decided both that 1) no objective external factor precluded Bradley from discovering the argument, and 2) that Bradley's counsel was not *Strickland* deficient in failing to raise the arguments because they were not clearly superior to the arguments raised on direct appeal. *Id.*

Bradley argues that he had cause for his failure to raise the arguments on direct appeal. He claims that the Court's backdated docketing of the *ex parte* communications in question made it difficult for Bradley's counsel to locate them, and indeed, that Bradley's counsel had no reason to suspect they existed. ECF No. 19-1 at 18-23. In the alternative, he claims it is at least debatable that if these communications *were* plain and easy to find, then his appellate counsel was constitutionally deficient in missing them. ECF No. 19-1 at 23-25.

The Government contends that the Court erred in finding actual prejudice but says that no reasonable jurist could dispute its decision to deny relief on these grounds. ECF No. 23 at 12. It alleges that the documents in question were in fact very easy to find, *id.* at 13, but that failure to make the argument on appeal was not ineffective assistance because other arguments made were not clearly inferior, *id.* at 14. Finally, it argues that no actual prejudice occurred and that Bradley's representation therefore does not fall under the *Strickland* bar. *Id.* at 14-18.

The Court found that these communications were improper and actually prejudiced Bradley. ECF No. 17 at 15-16. And the Court considers itself a reasonable jurist. So, to secure a COA on this issue, Bradley need only show that reasonable jurists could disagree about whether: 1) an objective external factor prevented his counsel's discovery of the *ex parte* communications, or 2) his counsel was *Strickland*-deficient in failing to find and argue them.

In *Murray v. Carrier*, the Supreme Court declared that procedural default turned on whether "some objective factor external to the defense impeded counsel's efforts" to properly pursue the prisoner's appeal—whether the "factual or legal basis for a

4

claim was not reasonably available to counsel," or whether there was "some interference by officials" rendering compliance impracticable. 477 U.S. 478, 488 (1986) (internal citations omitted).

The United States does not cite, nor has the Court located, a case that conclusively establishes that the Court's docketing procedures could not constitute an "objective external factor." Indeed, the Eleventh Circuit has found cause to excuse procedural default before on the basis of clerical error. *See Roberts v. Sutton*, 217 F.3d 1337, 1340-41 (11th Cir. 2000) (excusing default in § 2254 proceeding because clerk's office transmitted incomplete record to appellant). The Government accurately notes that the *Roberts* scenario was more extreme than what happened to Bradley. But in the absence of contrary binding authority conclusively limiting *Roberts*'s scope, reasonable jurists can disagree as to how far it goes. Therefore, the Court **GRANTS** a COA on this issue.[2]

### 4. Inquiry into Actual Motivation of Bradley's Appellate Counsel

In denying Bradley's initial habeas motion, the Court several times noted that a reasonable attorney might have pursued the strategy that Bradley's attorneys did. *See, e.g.*, ECF No. 17 at 13. Therefore, he seeks COA on the issue of the Court considering

> (a) whether counsel actually investigated and learned of the issue and then chose not to raise it for strategic reasons or failed to investigate and thus was unaware of the issue; or (b) only whether a hypothetical objectively reasonable counsel who knew of the issue could have chosen not to raise it.

ECF No. 19-1 at 25. To support his argument, Bradley concedes that "there is certainly support in Eleventh Circuit precedent for the Court's approach" taken in denying relief, but a plethora of cases from the Eleventh and other circuits demonstrate actual disagreement amongst jurists on the issue. *Id.* at 26-27 (citing, *e.g.*, *Green v. Nelson*, 595 F.3d 1245, 1249 (11th Cir. 2010); *Thomas v. Varner*, 428 F.3d 491, 499 n.7 (3d Cir. 2005); *Holsomback v. White*, 133 F.3d 1382, 1386-87 (11th Cir. 1998); *Baxter v. Thomas*, 45 F.3d 1501, 1514 (11th Cir. 1995)).

Bradley also calls the Court's attention, ECF No. 30, to a recent Supreme Court decision which stated, "[a]n attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014) (per curiam).

The United States responds by citing Eleventh Circuit precedent which it contends squarely forecloses this issue in favor of the objective approach. ECF No. 23 at 19 (citing, *e.g.*, *Chandler v. United States*, 218 F.3d 1305, 1315, 1315 n.16

---

[2] Because the Court accepts Bradley's primary argument for COA purposes, it does not take up his secondary, in-the-alternative *Strickland* argument. *See* ECF No. 19-1 at 23-25.

5

(11th Cir. 2000) (en banc)). The United States also contends that *Hinton* could not "suffice to discard binding Eleventh Circuit precedent on the point." ECF No. 31 at 3.

Bradley's citation to the myriad cases considering the subjective reasoning for an attorney's strategy in evaluating reasonableness demonstrates that "reasonable jurists could debate whether . . . the [issue] should have been resolved in a different manner" from the Court's hypothetical objectively reasonable attorney review. *Miller-El*, 537 U.S. at 336. Furthermore, *Hinton* suggests that an attorney's subjective deficiency could lead to unreasonable performance under *Strickland*. 134 S. Ct. at 1089. Although the matter in *Hinton* may have been patently distinguishable from Bradley's claims, the case still raises a point for debate, and such debate could justifiably resolve contrary to—and subsequently abrogate—binding Eleventh Circuit precedent. *Contra* ECF No. 31 at 3. Finally, the Government's citation to cases that it claims foreclose this issue buttresses the Court's decision to deny Bradley relief under § 2255; but, one or two or three favorable opinions cannot extinguish all debate memorialized in other judicial decisions. The Government's citations may foretell its success at the appellate level, but that is not the inquiry here. The Court *GRANTS* COA on this issue.

## IV. CONCLUSION

This habeas petition marks the third episode of Bradley's saga in the Bio-Med Plus case. After exhaustive discovery, a trial of formidable duration, and millions of dollars in legal fees for a superstar defense team, the jury convicted Bradley. Then many months and dollars later, the Eleventh Circuit affirmed his conviction. In this third installment, Bradley now places that same legal team on trial. The Court sees great irony in Bradley's accusation of incompetence against his nationally renowned defense team. The perfect case has never been tried, nor will it ever be.

Bradley has again enlisted a superstar group of lawyers, no doubt at an expense that only the wealthiest could afford. The Court wonders if he will spend millions more to scrutinize the efforts of these appellate attorneys in the future, forever holding the Court at bay of seemingly bottomless pockets.

Nevertheless, the standard for granting COA is low. The Court *GRANTS IN PART* and *DENIES IN PART* Bradley's request for a COA. ECF No. 19. The Court certifies the following issues are debatable amongst reasonable jurists:

1) whether Bradley's appellate counsel's failure to challenge the Court's issuance of a coercive supplemental jury instruction constituted ineffective assistance of counsel;

2) whether the ex parte nature and belated and unclear docketing of the Court's improper and prejudicial communications with the jury constitutes "cause" for Bradley's appellate counsel's failure to seek reversal based on those ex parte communications; and

3) in deciding whether counsel's failure to raise a given issue constitutes ineffective assistance, should the Court consider

6

whether counsel actually investigated and learned of the issue and then chose not to raise it for strategic reasons or failed to investigate and thus was unaware of the issue or, rather, should the Court consider only whether a hypothetical objectively reasonable counsel who knew of the issue could have chosen not to raise it.

This 25 day of March 2014.

_____
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA